UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

VIRGIL HILL,

                Plaintiff,

        v.

VINCENT P. MARINO, JOSEPH MUSCATELLO,
and RONALD R. SCHEPIS,

                Defendants.

----------------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
10-CV-5615 (PKC)

PAMELA K. CHEN, United States District Judge:

      Defendants Vincent Marino and Joseph Muscatello jointly, and Defendant Ronald Schepis separately, move for summary judgment in this matter. (Dkts. 80 and 70.) Plaintiff concedes that his claims against Defendant Muscatello should be dismissed. (Dkt. 77 at 2.) Defendant Muscatello, therefore, is dismissed from this action. With respect to Defendants Marino and Schepis, for the reasons set forth below, their motions are granted in their entirety, and summary judgment is entered in Defendants' favor as to all of Plaintiff's claims.

*BACKGROUND*

I.    <u>Plaintiff's Failure to Comply with Rule 56.1</u>

      Plaintiff has failed to comply with Local Civil Rule 56.1 ("Rule 56.1"), which requires that the parties each submit a separate statement of material facts in connection with a motion for summary judgment ("Rule 56.1 Statement"). *See* Local Civil Rule 56.1(a). Rule 56.1 requires that each statement of material fact be accompanied by a citation to admissible evidence contained in the record. *See* Rule 56.1(d). Plaintiff submitted no documentary or testimonial evidence in opposition to summary judgment, despite having conducted meaningful discovery,

including depositions of several of the Defendants. (*See* Dkt. 83.) Rather, Plaintiff submitted a bare-bones 56.1 Statement in which he admits a significant majority of the facts set forth in Defendants' 56.1 Statement, and states that "Plaintiff has insufficient knowledge upon which to admit or deny these allegations" with respect to the balance of the statements. (*See* Dkts. 83-1, 83-2.) Such general denials may be appropriate in the context of pleadings, but are wholly inadequate on summary judgment. *See* FRCP 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]"). Plaintiff's averments in his Rule 56.1 Statement cite to no evidence, let alone admissible evidence, in support of each statement and in no way comply with Rule 56.1.

Where a party opposing a motion for summary judgment fails to controvert a fact properly set forth in the moving party's Rule 56.1 Statement, that fact will be deemed admitted. *United States v. Kadoch*, 96-CV-4720, 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)); *see also Millus v. D'Angelo*, 224 F.3d 137, 138 (2d Cir. 2000) (affirming grant of summary judgment based on plaintiff's failure to submit a statement pursuant to Rule 56.1). Although the Court ordinarily has discretion to excuse a party's failure to comply with a local rule, such as Rule 56.1, the Court finds no good cause to do so here. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted). Plaintiff has suggested no reason for excusing his failure to comply with Rule 56.1, and the Court finds none, in particular because Plaintiff submitted no evidence in connection with the opposition to the motions. Accordingly, the Court deems admitted all of the facts set forth in Defendants' 56.1 Statement ("St.") (Dkt. 78.)[1]

---

[1] Defendant Schepis also submitted a 56.1 Statement in support of his motion for summary judgment, and the Court deems those facts admitted as well. (Dkt. 68) ("Schepis St.").

II.  Factual History

Plaintiff's claims arise out of an incident in which he was arrested and prosecuted for possessing and attempting to pass counterfeit Federal Reserve Notes, *i.e.* United States currency, in Nassau County, New York. (St. ¶¶ 1–3.) Defendant Marino is an agent of the United States Secret Service. Defendant Schepis is a detective with the Nassau County Police Department. (Pl. St. ¶ 40; St. ¶1.)

In the fall of 2007, Agent Marino was investigating the use of counterfeit $50 bills in Nassau County. (Schepis St. ¶ 1.) As part of that investigation, and in response to reports of counterfeit currency being passed in certain stores, Agent Marino interviewed store employees at a Sears department store in Garden City, New York, and at a Home Depot store in Jericho, New York. (St. ¶¶ 4–5; Dkt. 69-12 at 28–30.) Agent Marino interviewed Teadekera Yarborough, a cashier at the Garden City Sears, about the passing of $50 counterfeit bills at that store in August 2007. During the interview, Yarborough provided Agent Marino a description of the suspect. (Dkt. 69-12 at 8–12.)

Later, in October 2007, Agent Marino received a report from store security that counterfeit $50 bills had been passed at a Home Depot store in Westbury, New York. (St. ¶ 32.) In response to the report, Agent Marino interviewed employees of the Home Depot. Two employees, Robert Sajeva and Philip Stooksberry, provided physical descriptions matching the description provided by Yarborough in connection with the August 2007 incident at the Garden City Sears. (St. ¶¶ 29, 30, 33.) On October 24, 2007, both Sajeva and Stooksberry identified Plaintiff from a photo array as the man who passed counterfeit $50 bills at the Home Depot. (*See* Dkt. 76-4 at 1, 3; Dkt. 69-12 at 27–29, 36–37.) Stooksberry and Sajeva also signed affidavits attesting to the facts surrounding their identifications of Plaintiff as the individual

3

passing or attempting to pass counterfeit bills in their stores. (St. ¶¶ 7–8.) The day after the photo identifications by Stooksberry and Sajeva, Agent Marino returned to the Garden City Sears, and showed the same photo array to Yarborough. (Dkt. 76-3 at 36–37.) She identified Plaintiff as the person who had passed counterfeit bills in her store. (Dkt. 76-3 at 9–11, 37; Dkt. 76-4 at 2.)

On December 6, 2007, Defendants Marino, Muscatello, and Schepis, along with non-party John Harvey, another detective in the Nassau County Police Department, arrested Plaintiff at his place of employment. (Dkt. 69-12 at 44–45.) Plaintiff was arrested pursuant to a felony complaint sworn out by Detective Schepis, which was supported by the photo array identifications and witness statements made by the employees discussed above, as well as surveillance photos, and counterfeit bills seized from the stores. (Schepis St. ¶¶ 3–5, 11.)

Following Plaintiff's arrest, Agent Marino and Detective Schepis, along with other agents, processed Plaintiff's arrest and interviewed him at the police precinct. (Dkt. 69-12 at 47; Dkt. 69-14 at 15–16.) Plaintiff was prosecuted by the Nassau County District Attorney's Office on three counts of Criminal Possession of a Forged Instrument in the First Degree in violation of New York Penal Law Section 170.30. (Dkt. 69-2.)[2]

Approximately nine months later, on September 9, 2008, while Plaintiff's counterfeiting charges were pending, Plaintiff was arrested while out on bail. Nassau County Police Officer Darrell Aiken, a former defendant in this action, arrested Plaintiff after observing him sell marijuana to a confidential informant. (*See* Dkt. 47 at 4.) According to Plaintiff, following his

---

[2] Plaintiff alleges in his complaint that, during the course of these interviews, Detective Harvey told Plaintiff that he believed Plaintiff's claims of innocence. This allegation, discussed further below, has been abandoned by Plaintiff in his opposition to summary judgment. Nonetheless, the argument is without merit.

4

arrest he was interrogated by an unidentified Nassau County police detective who "expressed interest" only in Plaintiff's counterfeiting charge, not the drug arrest. (Dkt. 72 at 4; Dkt. 47 at 4–5.) Plaintiff argued in the first summary judgment motion that his drug arrest was pretextual, and that the actual purpose behind the drug arrest and subsequent charge was to pressure him into entering a guilty plea to the counterfeiting charges. (Dkt. 47 at 4–5.)[3]

Ultimately, however, on June 18, 2009, the counterfeiting charges against Plaintiff were dropped by the Nassau County District Attorney's Office because the office could not locate the civilian witnesses who had observed Plaintiff pass or attempt to pass the counterfeit currency. (Dkt. 36-4 at 3.)

III.  Procedural History

Plaintiff initiated this action on December 3, 2010. Plaintiff's complaint asserts claims under Title 42 U.S.C. Section 1983 for false arrest and malicious prosecution. (Dkt. 1 at 3–5.) Plaintiff's complaint initially named Defendants Marino and Schepis, former defendant Muscatello, and the now-dismissed defendant Darrell Aiken. Aiken moved for summary judgment because he was not involved in the underlying conduct that forms the basis of Plaintiff's complaint, namely, the arrest and prosecution on the counterfeiting charge. The Honorable Joanna Seybert, to whom this matter previously was assigned, granted summary judgment with respect to Aiken on the basis that Aiken's arrest of the Plaintiff on the unrelated drug possession charge was supported by probable cause. (Dkt. 47 at 8.) Judge Seybert further found that Plaintiff's theory that Aiken arrested Plaintiff in the unrelated drug case in an effort to pressure Plaintiff into pleading guilty on the counterfeiting case underlying this lawsuit was

---

[3] Plaintiff has abandoned this line of argument in the current summary judgment motion. (*See* Dkt. 77.)

entirely speculative. (Dkt. 47 at 8.) Plaintiff also argued in the first summary judgment motion that there was an alibi witness, his employer, who would have provided an alibi defense to Plaintiff's criminal charges, but that the investigators did not pursue that alleged lead. (*See* Dkt. 83-1 ¶ 40.)[4]

With respect to Defendants Marino, Schepis, and Muscatello, Judge Seybert denied summary judgment in order to allow Plaintiff to conduct limited discovery regarding what Defendants understood the evidence to be against Plaintiff at the time they arrested him for the use of counterfeit currency. (Dkt. 47 at 7.) Because Plaintiff "identified evidence that might bear on the probable cause analysis," Judge Seybert permitted a brief discovery period and granted the defendants leave to re-file for summary judgment thereafter. (Dkt. 47 at 8.)[5] Discovery proceeded, including the depositions of the Defendants. Defendants presently move for summary judgment on the same basis as their prior motion—that the arrest and subsequent prosecution of Plaintiff were supported by probable cause.

*SUMMARY JUDGMENT STANDARD*

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)*, 153

---

[4] Plaintiff provides no evidence in support of any alibi defense, such as the affidavit or deposition testimony of the purported alibi witness, and makes no argument with respect to that purported witness in the present motion.

[5] Judge Seybert's denial of summary judgment was based on the alleged statements by Detective Harvey to Plaintiff suggesting the detective's belief that Plaintiff was innocent. (Dkt. 47 at 6–7) ("Harvey's alleged statement that he thought Plaintiff was innocent (and that he'd deny that belief if Plaintiff repeated it to the other investigators) raises at least a question of what the [Defendants] understood the evidence against Plaintiff to be at the time they arrested him."). Again, Plaintiff does not raise this argument in the present summary judgment motion and therefore it is deemed abandoned.

F.3d 61, 67 (2d Cir. 1998) (*citing* FRCP 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir.1997); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee*, 109 F.3d at 134; *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson,* 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation") (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010). A plaintiff opposing summary judgment must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in

original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys*, 426 F.3d at 554.

*DISCUSSION*

I. <u>False Arrest</u>

Plaintiff's false arrest claim is evaluated under state substantive law. *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004); *see Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citation omitted) ("A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."). In New York, to prove the elements of false arrest, a plaintiff must establish that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). In connection with the fourth element of a claim for false arrest, "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852); *Kennedy v. City of New York*, --- Fed. App'x ----, 2014 WL 2853546, at *1 (2d Cir. June 24, 2014) (quoting *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013)) (where it exists, probable cause "presents a total defense to [a plaintiff's] actions for false arrest and malicious prosecution [and] entitle[s the defendants] to judgment as a matter of law.")

Generally, "probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jenkins*, 478 F.3d at 84–85 (citing *Weyant*, 101 F.3d at 852); *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Weyant*, 101 F.3d at 852). "Probable cause is, of course, evaluated on the totality of the circumstances." *Jenkins*, 478 F.3d at 90.

An eyewitness identification is generally, but not always, sufficient to establish probable cause to arrest. *See, e.g.*, *Celestin v. City of New York*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008) ("A positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest."); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.") (brackets and citation omitted). "'[A]bsent circumstances that raise doubts as to the victim's veracity,' a victim's identification is typically sufficient to provide probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Moreover, "information provided by 'an identified bystander with no apparent motive to falsify' has 'a peculiar likelihood of accuracy,'" and the Second Circuit has "endorsed the proposition that 'an identified citizen informant is presumed to be reliable.'" *Panetta*, 460 F.3d at 395 (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 163, 165 (2d Cir. 2002)). Lastly, "[t]he Supreme Court has recognized [] that 'if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability— . . . rigorous scrutiny of the basis of his knowledge [is] unnecessary.'" *Caldarola*, 298 F.3d at 163 (citing *Illinois v. Gates*, 462 U.S. 213, 233–34 (1983)).

During the investigation here, three non-party eyewitnesses independently identified Plaintiff as the person who passed or attempted to pass counterfeit bills at two different stores in

9

Nassau County. (Dkt. 69-6.) In addition, police investigators obtained the sworn statements of three witnesses, Sajeva, Stooksberry, and Dennis McGann, about their observations of Plaintiff as he attempted to purchase merchandise using the fake currency. (Dkt. 69-5.) Based on the three photographic identifications alone, there was probable cause to arrest Plaintiff. In combination with the sworn statements of the store employees and other evidence obtained through the investigation, there was ample evidence implicating Plaintiff in the counterfeit currency crime.

Plaintiff does not dispute that the investigation produced this evidence. (*See* Dkt. 83-1.) Nor does he contend that the eyewitnesses were unreliable or untrustworthy or that they had any motive to fabricate their identifications or statements. *See Caldarola*, 298 F.3d at 163. Rather, Plaintiff argues that the photographic identifications themselves were inaccurate or unreliable, and thus insufficient to establish probable cause to arrest him. (Dkt. 77 at 5–7.) In support of this argument, Plaintiff proffers several confusing and speculative theories, none of which has merit.

Plaintiff argues that the length of time between the counterfeiting incidents and the photographic identifications, *i.e.*, approximately eleven weeks, undermines the reliability of those identifications. (Dkt. 77 at 5.) While the passage of time between an eyewitness's observation of a crime and his or her subsequent identification of the perpetrators of that crime can bear on the accuracy of the identification, *see Minetos v. Scully*, 625 F. Supp. 815, 819 (S.D.N.Y. 1986), Plaintiff cites no legal authority, and the Court finds none, for the proposition that an eyewitness's photographic identification is unreliable solely because a period of eleven weeks elapsed between the event and the identification. *Contra Jackson v. Fogg*, 589 F.2d 108, 111 (2d Cir. 1978) (finding one-month interval between crime and identification "considerable").

Because witness identification reliability is judged in the totality of the circumstances, *Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009), courts that have considered the amount of time that elapsed between crime and confrontation have done so in the context of other factors. *Brisco*, 565 F.3d at 89–95. Relying on the Supreme Court's decision in *Manson v. Braithwaite*, 432 U.S. 98 (1977), the court in *Minetos* identified five factors to be considered as independent indicia of reliability of a witness identification: "1) the opportunity of the witness to view the suspect at the time of the crime; 2) the witnesses' degree of attention; 3) the accuracy of the witnesses' prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time elapsed between the crime and the confrontation." (the "*Manson* factors"). 625 F. Supp. at 819 (citing *Manson*, 432 U.S. at 114).[6] Plaintiff points to no other *Manson* factor that bears on the reliability of the three eyewitnesses' identifications of Plaintiff, other than the passage of time. Those *Manson* factors that are pertinent, however, provide support for the reliability of all three eyewitness identifications of Plaintiff. *Minetos*, 625 F. Supp. at 819. While the eleven-week period between the crime and the identifications is not insignificant, it is insufficient to undermine the reliability of the three independent eyewitness identifications, given the other *Manson* factors that strongly support their reliability. Perhaps most significantly, there is no evidence that the eyewitnesses expressed any uncertainty as to Plaintiff being the perpetrator of the charged crime. *Id.* at 819. Under the totality of these circumstances, and in light of the factors discussed in *Minetos*, Plaintiff's argument that, solely because of the period of time

---

[6] Importantly, these standards apply to the *admissibility* of eyewitness testimony at trial. Surely the standard for what level of eyewitness reliability generates probable cause to arrest is substantially lower than for admissibility at trial. *Cf. Spinelli v. United States*, 393 U.S. 410, 419 (1969) (abrogated on other grounds by *Illinois v. Gates*, 462 U.S. 213 (1983)) (reaffirming that "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial") (citing *McCray v. Illinois*, 386 U.S. 300, 311 (1967)). In any event, given that the eyewitness identifications satisfy *Minetos* and thereby warrant admission at trial, they manifestly satisfy the lower burden pertaining to probable cause to arrest.

11

elapsed between crime and confrontation, the eyewitness identifications were so unreliable as to defeat probable cause to arrest him is entirely without merit.

Relatedly, Plaintiff also argues that one occasion on which Philip Stooksberry witnessed Plaintiff occurred in October 2007, but that Stooksberry's eyewitness affidavit only states that he twice observed the counterfeit in August, without mentioning the October identification. (Dkt. 77 at 6–7) ("[I]t would be expected that, had [Stooksberry] seen the same person within a few days of being interviewed, the statement would reflect that more recent and more reliable identification. In fact, Stooksberry's statement reports that he never saw the individual again after the second occasion in August."). This argument, however, is based on an incorrect understanding of the deposition testimony of Agent Marino, and is in any event insufficient to raise a genuine issue as to the probable cause underlying Plaintiff's arrest.

In connection with this case, Agent Marino was deposed, and testified, in part, that in October 2007, he responded to a report of a possible counterfeiting incident at the Home Depot store. (St. ¶ 32.) At that time, Agent Marino took statements from several Home Depot employees, including Stooksberry, who reported, in part and substance, that *several weeks earlier*, he had observed someone engaging in possible counterfeiting activity at the store. (Dkt. 76-3 at 28–29.)[7] Nowhere in Agent Marino's deposition testimony does he testify that Stooksberry observed Plaintiff in October. Rather, the testimony to which Plaintiff points is equivocal at best. (Dkt. 69-12 at 27–29.)

Based on Agent Marino's testimony about being called to the Home Depot store in October 2007, Plaintiff erroneously argues that Stooksberry observed Plaintiff at the store in

---

[7] The physical descriptions of the counterfeiter provided by Stooksberry and Saveja matched the description that had been provided by Yarborough in connection with the August 2007 incident at the Sears store, and ultimately all three witnesses identified Plaintiff from a photo array. (St. ¶¶ 29, 30, 33.)

12

October 2007, instead of twice in August 2007, as Stooksberry stated in his affidavit, and that therefore his affidavit, as well as all of the other witnesses' affidavits, are unreliable. (Dkt. 69-12 at 28.) However, as discussed, Agent Marino plainly stated during his deposition, that when the agent interviewed Stooksberry in October 2007, Stooksberry advised the agent of an incident that had happened "a few weeks prior." (Dkt. 76-3 at 28–29.) Hence, Agent Marino never testified that Stooksberry had observed Plaintiff in October; rather, the agent testified that Stooksberry reported in October 2007 about his observations of Plaintiff weeks prior to that date. (Dkt. 76-3 at 28–29.) Marino's testimony that Stooksberry had observed Plaintiff "a few weeks prior to that" is consistent with Stooksberry's affidavit, in which he reported seeing Plaintiff at the Home Depot store two times in August 2007. Yet, even construing the testimony in the light most favorable to Plaintiff, by interpreting it to be that Stooksberry witnessed Plaintiff in October but did not include that identification in his affidavit, the testimony is inadequate to raise a genuine issue of fact that Stooksberry's two prior identifications, to which he swore in his affidavit, are unreliable. Plaintiff's argument, therefore, is without merit.

Plaintiff also argues that there was no probable cause to arrest him because Agent Marino was aware of another person who was passing counterfeit bills in Nassau County around the time of Plaintiff's arrest,[8] yet did not include that person in the photo array shown to the eyewitnesses who identified Plaintiff. (Dkt. 77 at 5.) However, Plaintiff provides no evidence that the existence of another counterfeiter in Nassau County raises any doubt as to the veracity or

---

[8] Plaintiff alleges that Agent Marino was aware that a man named Shawn Davidson had been identified as a counterfeiter by a woman who was arrested in Nassau County in the months prior to Defendant's own arrest. (*See* Dkt. 72 at 5–6.) The woman reportedly told police that Davidson had given her merchandise purchased with counterfeit bills, and had instructed her to return the merchandise to the store from which they were purchased, in exchange for cash, on at least six occasions. (Dkt. 72 at 5.)

reliability of the three eyewitnesses' identification of Plaintiff as the counterfeiter at the Sears and Home Depot stores. Plaintiff points to no evidence that the eyewitnesses were at all unsure of their identifications, or that the investigators had reason to believe that the other alleged counterfeiter, and not Plaintiff, was the culprit. Indeed, as Plaintiff acknowledges, one of the eyewitnesses was shown a photo array that included both Plaintiff and Davidson, the other alleged counterfeiter, and the eyewitness still identified Plaintiff as the perpetrator. (Dkt. 77 at 6 n.2; Dkt. 69-12 at 23, 42.) Plaintiff's argument, therefore, is wholly without merit.

Plaintiff also questions the veracity of McGann's affidavit and the related Yarborough identification. (Dkt. 77 at 6.) McGann was a security officer at the Sears Store in Garden City during the relevant time frame. McGann's affidavit states that he was alerted by a cashier, Kim Brody, to a man who was attempting to pay with counterfeit $50 bills. (Dkt. 77 at 6; Dkt. 69-5.) Plaintiff confusingly argues that McGann's report of being alerted by Brody renders Yarborough's identification suspicious because Brody did not view a photo array (or viewed a photo array and did not identify Plaintiff). (Dkt. 77 at 6.) Plaintiff also contends that Yarborough's identification is unreliable because Yarborough did not also execute an affidavit regarding her identification or her observations of Plaintiff engaging in counterfeit activity.[9] (Dkt. 77 at 6 ("It is curious that no affidavit reciting specific facts about her observations of the suspect was obtained from Ms. Yarborough . . . [Yarborough's identification] is a mere conclusory statement.")). Plaintiff's arguments, premised on vague and unsupported suspicions, are without merit. Plaintiff fails to suggest a rational basis for concluding that the Yarborough identification is in any way unreliable simply because she did not also execute an affidavit in addition to her identification, or because McGann stated that Brody alerted him to the counterfeit

---

[9] McGann executed an affidavit but does not appear to have identified Plaintiff in a lineup. (*See* Dkt. 69-5, 69-6.)

bills, not Yarborough. There is nothing inconsistent with Brody witnessing Plaintiff attempting to pass counterfeit bills and alerting McGann, and Yarborough separately witnessing Plaintiff attempt to pass counterfeit bills. More to the point, Plaintiff points to no evidence suggesting that Yarborough's identification was fabricated or otherwise unreliable. Indeed, it is apparent that Yarborough saw Plaintiff separate and apart from Brody's observation of him—Yarborough's identification of Plaintiff states that he "passed fake money, also left Sears in a Uhaul truck" and that she "also saw [Plaintiff] at Uhaul in Hempstead the next day." (Dkt. 69-6 at ECF 4.) It is clear that Yarborough and Brody did not see Plaintiff at the same time and that there is, therefore, nothing odd or suspicious about McGann's reference in his affidavit to Brody's independent report to him. (Dkt. 69-5 at 1.) Indeed, it is entirely possible, yet irrelevant, that McGann was unaware that Yarborough had seen Plaintiff engage in criminal activity. In sum, Yarborough's identification of Plaintiff is in no way inconsistent with either the McGann affidavit or Brody's statements contained therein. In sum, Plaintiff fails to raise a genuine issue of fact as to the reliability of Yarborough's identification of Plaintiff.

Plaintiff next faults the fact that neither Brody nor McGann were asked to view a photo array "or did so and failed to identify Plaintiff as the culprit." (Dkt. 77 at 6.) Plaintiff also faults the witnesses who, "although they were security personnel, [failed to] obtain license plate numbers" of the getaway vehicles in which Plaintiff allegedly fled. (Dkt. 77 at 6–7.) Plaintiff's commentary on the absence of certain evidence or the alleged failures of private, non-party witnesses in this case to obtain certain evidence is irrelevant, and fails to raise a genuine issue of fact with respect to the probable cause underlying Plaintiff's arrest and subsequent prosecution.

Lastly, Plaintiff stated in his deposition—but does not argue in opposition to the present motion—that Detective Harvey told Plaintiff during the investigation that he (Harvey) believed

15

Plaintiff's claims of innocence. (Dkt. 69-11 41:25–46:19.) Judge Seybert denied Defendants' first summary judgment motion on the basis that "Harvey's alleged statement that he thought Plaintiff was innocent . . . raises at least a question of what the Federal and County Defendants understood the evidence against the Plaintiff to be at the time they arrested him." (Dkt. 47 at 7.) Judge Seybert denied summary judgment to allow Plaintiff the opportunity to ascertain the potential truth of Detective Harvey's purported statement with leave for Defendants to renew their summary judgment motion following a limited discovery period.

Plaintiff has adduced no evidence through this additional period of discovery to substantiate his claims regarding Detective Harvey's alleged statement. Detective Harvey denies making the statement. (Dkt. 76-8 at 14–15.) Moreover, Plaintiff claims that Detective Harvey told Plaintiff that he (Harvey) would not communicate his belief about Plaintiff's innocence to his colleagues, which means that, even assuming *arguendo* that Harvey held such a belief, or told Plaintiff he held such a belief, that belief was never communicated to the other agents or the prosecutors. This, in turn, would mean that the prosecutors and other investigators would have had no reason to question the otherwise overwhelming probable cause to arrest Plaintiff, notwithstanding Detective Harvey's purported (and entirely unsubstantiated) personal doubts. Importantly, Plaintiff has not named Detective Harvey as a defendant in this lawsuit. Therefore, any knowledge or belief that Detective Harvey had, in order to cast doubt on the probable cause supporting Plaintiff's arrest, would have to be imputed to Defendants. Plaintiff has not suggested that Detective Harvey told the Defendants of his alleged belief. In any event, Plaintiff has abandoned this argument by not raising it in the present motion.

To conclude, the sum and substance of Plaintiff's arguments is that "[g]iven the inconsistencies in the Sears incident and the long passage of time between the events and the

identifications in the Home Depot case, Plaintiff submits that there are factual issues that need to be resolved in order to determine whether probable cause would indeed exist in the mind of a reasonable police officer or Special Agent." (Dkt. 77 at 7.) Even resolving all ambiguities and drawing all permissible factual inferences in favor of Plaintiff, the Court concludes that Plaintiff has failed to present any evidence raising a genuine issue of fact regarding the existence of probable cause to arrest him. As a matter of law and under the totality of these circumstances, probable cause supported Plaintiff's arrest for engaging in counterfeiting activity on multiple occasions.

II. Malicious Prosecution

The above probable cause analysis also bears on Plaintiff's malicious prosecution claim. Like claims for false arrest, claims under Section 1983 for malicious prosecution are governed by state law. *Davis*, 364 F.3d at 433. To establish a claim of malicious prosecution in New York, a plaintiff must demonstrate "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted). "Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010).

In connection with a malicious prosecution claim, the probable cause at issue is not identical to probable cause to arrest, but rather is "probable cause to believe that [the plaintiff] could be successfully prosecuted." *Gannon v. City of New York*, 917 F. Supp. 2d 241, 244 (S.D.N.Y. 2013) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir.

1999)). Nevertheless, "continuing probable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, --- F.3d ----, 2014 WL 1717091 (2d Cir. 2014) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143–44 (2d Cir. 2003) (stating that probable cause to arrest is a defense to a claim of malicious prosecution if it is not later nullified by information establishing the defendant's innocence.)) "[P]robable cause could 'dissipate' if the 'groundless nature of the charges [were] made apparent by the discovery of some intervening fact.'" *Wieder v. NYPD*, --- Fed. App'x ----, 2014 WL 2722568, at *2 (2d Cir. June 17, 2014) (summary order) (citing *Kinzer*, 316 F.3d at 144).

Here, there is no distinction between the probable cause that existed to arrest Plaintiff and the probable cause to prosecute him. Plaintiff points to no "intervening fact" that dissipated the probable cause supporting his arrest. At a minimum, the combination of the eyewitness identifications, accompanied by the detailed affidavits setting forth the circumstances of those identifications, created sufficient continuing probable cause to prosecute Plaintiff. Plaintiff does not suggest, let alone point to evidence, that Plaintiff's prosecution ultimately was terminated for any reason other than that witnesses were no longer available to testify at trial, which led the Nassau County District Attorney's Office to dismiss the charges against Plaintiff. (*See* Dkt. 69-4.)[10] Accordingly, the same probable cause supporting Plaintiff's arrest also supported Plaintiff's prosecution for the crimes for which he was arrested. There is no genuine issue of fact

---

[10] Plaintiff also has failed to address, let alone raise a genuine issue of fact with respect to, the fourth prong of malicious prosecution, namely, that Plaintiff was prosecuted with malicious intent. Nothing in the record suggests that Plaintiff was prosecuted for any reason other than that his prosecution was supported by probable cause.

that Plaintiff's prosecution was supported by probable cause, and Plaintiff's claims must fail as a matter of law.[11]

## CONCLUSION

For the reasons set forth above, Plaintiff has failed to raise a genuine issue of fact as to the existence of probable cause to support his arrest and subsequent prosecution. Accordingly, the motions for summary judgment of Defendants Marino and Schepis are granted in their entirety.[12] The Clerk of Court respectfully is directed to enter judgment in favor of Defendants and terminate this matter.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: August 26, 2014
       Brooklyn, New York

---

[11] Defendants also argue that even if there was no probable cause to arrest Plaintiff, they are nonetheless entitled to qualified immunity. The qualified immunity doctrine provides that, "[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera*, 361 F.3d at 743 (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). Having found, as a matter of law, that probable cause supported Plaintiff's arrest, the Court need not, and does not, reach this issue.

[12] As stated above, Plaintiff withdrew his claims with respect to Defendant Muscatello.